UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VSE CORPORATION | CIVIL ACTION |
| VERSUS | NO. 19-10827 |
| HAROLD KORETZKY AND CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX, L.L.C. | SECTION "R" (4) |

## ORDER AND REASONS

The Court has received the amended motion to stay and administratively close the current proceedings from plaintiff VSE Corporation.[1] Because neither the interests of justice nor federal statute requires a stay, the Court denies the motion.

## I. BACKGROUND

This case arises from alleged legal malpractice. Plaintiff retained defendants to draft a Collective Bargaining Agreement with the International Association of Machinists and Aerospace Workers, AFL-CIO.[2] Plaintiff alleges that defendant Koretzky recommended that plaintiff include in the

---

[1]  R. Doc. 19.
[2]  *See* R. Doc. 1 at 2 ¶ 8.

Agreement a provision requiring mandatory unpaid breaks.[3] Plaintiff and the machinists' union signed the Agreement.[4] But the requirement for unpaid breaks allegedly violated the Fair Labor Standards Act.[5] Consequently, plaintiff was sued in the Eastern District of Texas.[6]

Over a year after the Texas suit commenced, plaintiff filed the current malpractice action against defendants.[7] Defendants responded with a motion to dismiss.[8] After defendants' motion to dismiss was submitted and pending, plaintiff filed the current motion to stay.[9] Defendants oppose the stay.[10]

## II.   DISCUSSION

Plaintiff identifies two reasons for the Court to provide a stay. First, plaintiff argues that since the Texas suit and the current suit are interrelated, the Court should stay the current suit pending the result of the Texas suit.

---

[3]   *See id.* at 2 ¶ 9.
[4]   *See id.* at 3 ¶ 12.
[5]   *See id.* at 3 ¶ 10.
[6]   *See id.* at 3 ¶¶ 13-14.
[7]   R. Doc. 1 at 3 ¶ 13.
[8]   R. Doc. 5.
[9]   R. Doc. 24.
[10]  R. Doc. 25.

Second, plaintiff alleges that the case is subject to arbitration. The Court will address each issue in turn.

## A. Texas Suit

Plaintiff argues that the outcome of the Texas suit could influence the current suit, and that as a result, the Court should stay the current suit until the judgment in the Texas suit issues.[11] Because the current suit is perempted on its face, the Court finds the outcome of the Texas suit immaterial, and not a basis for granting a stay.

"The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. C.H. Blanchard,* 667 F.2d 477, 479 (5th Cir. 1982). The Court must "weigh competing interests and maintain an even balance" between the party advocating a stay and the parties opposing the stay. *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936). "[B]efore granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v. Fibreboard*

---

[11] *See* R. Doc. 24 at 4.

*Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *McKnight*, 667 F.2d at 479).

Here, plaintiff argues that a stay is appropriate for two reasons. First, "the decision in [the Texas suit] is determinative as to whether this case has merit."[12] That is, if the Texas court rules in plaintiff's favor, it could "render the present suit moot."[13] Second, plaintiff argues that until that suit concludes "damages are wholly unknown and speculative."[14] As a result, "a determination of liability against defendant would have no effect for potentially years," until the Texas collective action concludes.[15]

In some scenarios, a pending, related suit can warrant the stay of a legal malpractice action. In *Dwyer v. Binegar*, 95 So. 3d 565 (La. App. 4 Cir. 2012), for instance, the Louisiana Court of Appeal for the Fourth Circuit found a stay appropriate pending the resolution of an issue in an underlying suit that, as here, arose from the alleged error triggering the legal malpractice suit. *See id.* at 566-67, 571. The court acknowledged that if the underlying suit concluded in the plaintiff's favor, the malpractice suit could be dismissed. *See id.* at 571. But, because of the limitations period applicable

---

12    R. Doc. 24 at 1.
13    *Id.* at 4.
14    *Id.*
15    *See id.*

4

to legal malpractice, waiting for the underlying suit to conclude could lead to the peremption of plaintiff's malpractice action. *See id.* at 568-69, 571. The court therefore reasoned that failing to issue a stay "could lead to the extinguishment of [the plaintiff's] cause of action against the defendants before one knows whether a party defendant herein actually may have malpracticed—an absurd result." *Id.* at 571.

This logic, though, does not apply here. The Court has considered defendants' motion to dismiss for failure to state a claim, and found plaintiff's suit perempted.[16] As such, unlike in *Dwyer*, the Court need not await the results of the Texas suit to determine whether defendants actually committed malpractice. Indeed, the *Dwyer* court ordered a stay only after overturning the trial court's finding that—because no attorney-client relationship existed—the plaintiff had no right of action. *See* 95 So. 3d at 570-71. But here, the Court's finding that plaintiff has no right of action stands. As a result, the Texas court's determination about the merits of and damages arising from the underlying suit will have no bearing on the outcome of the case before this Court. In such circumstances, a stay is not appropriate.

---

16     R. Doc. 28.

5

The other considerations relevant to a stay also militate against issuing one here. Because the Court can adjudicate the case now, defendants have a strong interest in having the case dismissed, rather than prolonged unnecessarily. Furthermore, plaintiff's requesting a stay of indefinite duration—requiring possibly "several years" for the Texas suit to conclude[17]—also weighs against its issuance. Overall, therefore, the Court finds that the interests of justice do not support applying a stay based on the Texas suit.

**B. Arbitration Clause**

Plaintiff also claims that the matter should be stayed pursuant to an arbitration agreement.[18] Plaintiff relies on an unsigned engagement letter from defendants' files, which contains a clause stating that "any claim or controversy" between the parties "shall be settled by . . . binding arbitration."[19] Because the Court finds that the parties never entered an arbitration agreement, the Court finds that a stay pending arbitration is unwarranted.

The Federal Arbitration Act permits a party to request a stay of judicial proceedings. Specifically, Section 3 of the FAA states that upon a party's

---

17 R. Doc. 24 at 4.
18 *See* R. Doc. 24 at 1.
19 R. Doc. 24-2 at 4.

request, a court "shall" stay an action pending arbitration where the suit involves an issue "referable to arbitration" based on an "agreement in writing." *See* 9 U.S.C. § 3. The Fifth Circuit "has never discussed the appropriate standard for a district court to apply when considering a motion to stay." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010); *see also Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019). But "the majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant." *Rain CII Carbon, LLC*, 2010 WL 148292, at *3. That said, the Fifth Circuit has instructed that when deciding whether to issue a stay, "a court must 'first determine whether there is a written agreement to arbitrate'; then, 'whether any of the issues raised are within the reach of that agreement.'" *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (quoting *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986)).

Here, defendants state that they never entered into a written agreement to arbitrate with plaintiff.[20] Although questions about a contract's validity are for the arbitrator, a court may decide questions about

---

[20] *See* R. Doc. 25 at 4.

contract formation. *See Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019). In making this decision, "[c]ourts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* at 394 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Because the Court's jurisdiction arises from the parties' diversity of citizenship,[21] the Court looks to Louisiana law. *See Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 332 (5th Cir. 2011) ("Where federal jurisdiction is based on diversity, [a court] appl[ies] the substantive law of the forum state."); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under Louisiana law, "[a] contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927. Consent requires "a meeting of the minds of the parties." *Philips v. Berner*, 789 So. 2d 41, 45 (La. App. 4 Cir. 2001).

Defendants contend that they never consented to arbitration, and there was no meeting of the minds, because the document relied on by plaintiff was never offered by defendants to plaintiff. Specifically, defendants argue that although defendant Koretzky signed the letter at issue, it was never sent to plaintiff.[22] Defendants claim that the Department of Labor rule that

---

[21] *See* R. Doc. 1 at 1 ¶ 1.
[22] *See* R. Doc. 25 at 4.

8

instigated defendants' drafting a new engagement letter was enjoined, thus removing the need for the new agreement.[23] Plaintiff came in possession of the draft letter, defendants surmise, only when defendants turned over their files to plaintiff after the initiation of the Texas suit.[24]

Defendants provide evidence to support their position. To support the argument that defendants never transmitted the document to plaintiff, defendants submit an email—dated the same day as the alleged contract—which states that as a result of the injunction, "engagement letters addressing [the DOL's rule] are unnecessary at this time."[25] Further supporting the draft nature of the document, defendants note that "[n]o specific assignment is set forth . . . , and it was never signed by Plaintiff."[26] The Court also notes that the document is Bates stamped,[27] which is consistent with defendants' contention that plaintiff came in possession of the document after defendants turned over their files. Finally, supporting the contention that a meeting of the minds never occurred, defendants suggest that "[p]laintiff

---

[23] *See id.*
[24] *See id.* at 5.
[25] R. Doc. 25-1 at 1.
[26] R. Doc. 25 at 4 (emphasis removed); *see* R. Doc. 24-2 at 1-2, 5.
[27] *See, e.g.*, R. Doc. 24-2 at 1.

clearly did not think that it was bound by this draft engagement letter," as it did not initiate arbitration, but rather sued defendants.[28]

Plaintiff, by contrast, provides no evidence to support the application of the arbitration agreement, other than supplying the purported agreement itself.[29] Indeed, the full extent of its argument that the case should be stayed for arbitration consists of a single sentence: "Further, this case is subject to an arbitration clause."[30]

The Court has evaluated the evidence and arguments provided by the parties, and does not find the evidence sufficient to establish that defendants offered a contract containing an arbitration clause that plaintiff accepted. In other words, the parties never had a meeting of the minds, and thus never consented to arbitration. Consequently, the Court does not find that the parties formed a contract based on the draft engagement letter. Since the parties formed no written agreement to arbitrate, the Court need not mandatorily issue a stay under Section 3 of the FAA. Furthermore, the Court finds no reason to otherwise issue a discretionary stay.

---

[28] *See* R. Doc. 25 at 5.
[29] R. Doc. 24-2.
[30] R. Doc. 24.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to stay or administratively close the case.

New Orleans, Louisiana, this __20th__ day of December, 2019.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE